HUNTSVILLE IRR. ASS'N et al. v. ROLLO et al.

No. 3471.　Decided July 8, 1920.　(191 Pac. 423.)

1. WATERS AND WATER COURSES—PRIOR RIGHT OF APPROPRIATION HELD NOT WAIVED BY AGREEMENT. Agreement by irrigation associations, prior appropriators of water, to furnish the use of their joint canal to carry specified amount of water to a point from which secondary appropriator diverted water, in consideration of the right to enlarge ditch across the latter's land, *held* not a waiver of prior right to appropriation of such amount of water, though irrigation association continued for some years to supply him with such water.

2. EVIDENCE—STATEMENT OF COUNSEL HELD NOT AN ADMISSION OF PRIOR RIGHT OF APPROPRIATION. In prior appropriators' action to enjoin secondary appropriator from diverting water, in which plaintiffs conceded that defendant had a secondary right to the water, a statement by plaintiffs' counsel, during cross-examination of a witness, that the defendant's right to water was not in controversy *held* not an admission that defendant's right to the water was prior to that of plaintiffs.

Appeal from District Court, Second District, Weber County; *A. W. Agee*, Judge.

Action by the Huntsville Irrigation Association and others against Peter Rollo and others. Judgment for the named defendant and judgment of dismissal as to defendants not named, and plaintiffs appeal.

REVERSED and REMANDED.

*Chez & Barker*, of Ogden, for appellants.

*Halverson, Kimball & Farr*, of Ogden, for respondents.

THURMAN, J.

Plaintiffs brought this action in the district court of Weber county to enjoin defendants from diverting certain waters from the south fork of Ogden river. Plaintiffs are irrigation

corporations organized under the laws of Utah for the pur-
pose of furnishing and distributing water to their respective
stockholders for irrigation and other beneficial purposes.

The joint complaint of plaintiffs alleges that more than
fifty years before the commencement of the action the pred-
ecessors of plaintiffs, by means of dams and ditches con-
structed by them, diverted and appropriated certain
quantities of water from the south fork of said river, and
conducted the same upon their lands situated in Weber coun-
ty; that said quantities of water have ever since been used
by said plaintiffs from June 1 to October 15 of each and
every year for the irrigation of said lands and for the other
purposes mentioned; that the quantity of water so appro-
priated and used by the Huntsville Irrigation Association,
hereinafter called the Huntsville Company, was thirty sec-
ond feet, and that the quantity so appropriated and used
by the Felt-Peterson-Slater Water & Canal Company, here-
inafter called the Felt-Peterson Company, was two and one-
half second feet; that it is necessary to irrigate said lands
in order to produce agricultural crops, and that all of said
water so appropriated and used was necessary for the irri-
gation of said lands, and for other beneficial purposes. It
is then alleged in the complaint that at various times in the
month of July, 1919, while plaintiffs were distributing said
water to their stockholders to irrigate their crops, and while
said crops were in actual need of said water, defendants en-
tered upon the said south fork of said river at a point above
where plaintiffs diverted said water, and cut the banks of
said river, and by means of ditches wrongfully diverted
therefrom about four second feet of said water, thereby mak-
ing it impossible for plaintiffs to furnish and deliver to their
stockholders the aforesaid quantities of water to which they
were entitled. The complaint also alleges threats on the part
of defendants to continue said unlawful diversions of water
and the belief of plaintiffs that defendants will execute said
threats and continue said unlawful diversions if not re-
strained by judgment of the court.

The answer of defendants admits that the lands of plain-

tiff's stockholders require irrigation to produce agricultural crops, and denies the remaining allegations of the complaint. It demands judgment that plaintiffs take nothing by their complaint, but does not ask for affirmative relief.

The trial court found that plaintiff's predecessors in interest appropriated the quantities of water claimed by them more than fifty years ago, and conducted the same upon their lands, and that thereafter said predecessors and plaintiffs had continuously used said water during the irrigation season of each year from June 1 to October 1, for the irrigation of agricultural crops and for domestic use and the watering of stock. The court also found that defendant Peter Rollo in 1878 appropriated four second feet of water from the same stream and that thereafter he and his successors in interest had continuously diverted and used the same for irrigation, watering stock and domestic purposes during the irrigation season from June 1 to October 1 of each and every year. It also found that the said appropriation by said defendant Peter Rollo when made was subject and junior to the appropriation made by plaintiffs. The court further found, in effect, that by reason of a certain agreement entered into July 29, 1891, between the plaintiff Huntsville Company and defendant Peter Rollo said company had waived any priority of right it may have had as against defendants concerning the water in controversy. In this connection the court also found that from and after the date of said agreement and until the year 1904 said Huntsville Company, during each and every irrigation season from June 1 to October 1, had delivered to defendant Peter Rollo said four second feet of water of the waters of said stream for the purposes above mentioned, and that said plaintiff Felt-Peterson Company was cognizant thereof and acquiesced therein.

As conclusions of law the court found that plaintiffs were entitled to the quantities of water claimed by them, but subject to the right of defendant Peter Rollo to four second feet of the water of said stream. The action as against the other defendants was dismissed. Judgment was entered in accordance with the above findings and conclusions, from which

judgment plaintiffs appeal and assign as error the findings of fact and conclusions by which defendant Peter Rollo was awarded four second feet of the water as a prior right against the rights of the plaintiff corporations.

The mere statement of the case shows on its face that the agreement between plaintiff Huntsville Company and defendant Peter Rollo in 1891 became and was a controlling factor in the findings and conclusions of the court. Without that agreement and the conduct of the parties thereafter as found by the court, the findings and conclusions must have been in favor of the plaintiffs and relief awarded in accordance with the prayer of their complaint.

What then are the facts in respect to matters leading up to the agreement, and what is the agreement that was entered into by the contracting parties? The record discloses the fact to be, as stated in the complaint, that plaintiff corporations divert the water from the stream in question by means of separate ditches and intakes situated below the intakes of the ditches used by defendant. The plaintiffs made their appropriation in 1861 and 1862. The defendant Peter Rollo made his appropriation in 1877 or 1878. In 1891 the plaintiff Huntsville Company, without the co-operation or knowledge, as far as the record discloses, of its coplaintiff in this action, entered into the agreement upon which the court bases its findings and conclusions to which we have referred. The agreement, as set forth in respondent's brief, reads as follows:

"An agreement entered into on this 29th day of July, A. D. 1891, between Peter Rollo and Portia Rollo, his wife, both of Huntsville, in the county of Weber, territory of Utah, acting for themselves and for William Rollo, their father, whose agent they are, the parties of the first part, and A. W. Garner, president of the Huntsville Irrigation Association Company, and A. J. Anderson, acting president of the Mountain Canal Irrigation Association Company, parties of the second part, witnesseth:

"That the parties of the first part for the sum of $85.00, receipt whereof is hereby acknowledged, bargain, grant and sell all of their right, title, and interest in the Huntsville and Mountain joint irrigation canals from a point west of the north and south center section line of section 15, provided: That said joint irrigation canal

furnish the use of their joint canal to carry 200 inches of water from the head of their canal to a point 10 rods east of said center line of said section 15, and that said companies put in a suitable ditch at said point for the purpose of taking said water on to the Peter Rollo land."

The trial court, in the findings and conclusions of which appellants complain, construes this agreement together with other matters of record to mean that plaintiff, the Huntsville Company, obligated itself to deliver to defendant Peter Rollo four second feet of the water of said stream at his point of diversion from the canal mentioned in the agreement during each and every irrigation season, even if it required all the water flowing in the stream. The language of the instrument, standing alone, is not susceptible of that construction. If we construe the language in the light of the circumstances under which the agreement was made, its meaning and intent become reasonably clear. The Huntsville Company evidently desired for its own convenience to move its point of diversion higher up the stream. The defendant Peter Rollo diverted water at two points of diversion, known as his upper ditch and lower ditch. The upper ditch diverted water at a point about one-half mile above the intake of the Huntsville Company's ditch, and was susceptible of enlargement so as to carry water for both the Huntsville Company and the defendant. The plaintiff was willing to pay a consideration for the privilege of enlarging the ditch across defendant's land, and in addition to the money consideration mentioned in the agreement was willing to obligate itself to construct the ditch of sufficient capacity, not only to convey its own water, but also 200 inches for the defendant, down to his point of diversion. It was stipulated that 200 inches is the equivalent of four second feet. These are the circumstances under which the agreement was entered into. It certainly cannot be deduced from the language of the instrument, whether considered alone or in connection with the circumstances mentioned, that the Huntsville Company intended thereby to concede to the defendant a prior right to any portion of the water. The evidence shows that the Huntsville Company ordinarily, during every irrigation

season needed all the water it had appropriated. A considerable portion of the time it was compelled to get along with less. In the opinion of the writer the fair and reasonable interpretation of the agreement is that the Huntsville Company only undertook to make the ditch large enough to carry its own water and in addition thereto four second feet for the defendant, without any concession whatever that defendant was entitled to that quantity of water. Indeed it is difficult to see why the Huntsville Company should have had any concern as to the quantity of water to which defendant was entitled. That question was not in any manner involved in the agreement as written. Whether the defendant's right was a primary or a secondary right would make no difference. It required the same capacity to convey the water of one class as it did the other.

But the trial court also found that after said agreement was entered into and from that time down to 1904 when the Huntsville Company again changed its point of diversion, it continued to use said canal during the irrigation season, and delivered to said defendant Peter Rollo the said four second feet of water from said stream. This is regarded by respondent as a practical construction of said agreement, interpreting the meaning of the contracting parties.

Conceding that this finding is supported by the evidence, there is, nevertheless, a cogent reason why the delivery of the water to the defendant down to 1904 is not available as a practical construction of the agreement. There is no finding of the court that during this same period of time the Huntsville Company did not have all the water to which it was entitled by virtue of its appropriation. If, during the whole period of time from the date of the agreement down to 1904, the Huntsville Company had its thirty second feet of water available for use, and was not deprived of any part thereof by defendant, what grounds did the plaintiff have for complaint? It must be conceded that if such was the case the defendant, even though his right may have been only a secondary right, was entitled to the four second feet of water, or even more if the water was available.

For the reasons stated, we are of the opinion that neither the agreement itself nor the agreement coupled with the so-called practical construction justified the findings and conclusions of the court by which defendant was awarded a prior right to four second feet of the water as against the plaintiffs.

There is, however, another feature of the case, considered in connection with what has been said, upon which respondents seem to rely with more than ordinary confidence. During the cross-examination of one of plaintiffs' witnesses concerning the rights of defendants to four second feet of water of the ditch in question the witness testified to the effect that such was a recognized right. In response to a question by the court appellants' counsel stated in effect that such right was not in controversy; that that was not why the suit was brought. This on its face would seem to be an unqualified admission that defendant was entitled to four second feet of the water. But even if we give to the language a literal construction it would require a strained interpretation to hold that appellants' counsel intended thereby to admit that defendants' right was prior to plaintiffs'. As we read the pleadings and the evidence in the case, the contention of plaintiffs from the beginning to the end of the entire proceeding was that plaintiffs' rights to the water claimed by them was superior to that of defendant. Even the witness who testified as above stated, on redirect examination, explained his meaning by saying, in effect, that defendant was entitled to that quantity of water only when plaintiffs' rights were supplied. In view of these circumstances, it is inconceivable that appellant intended to concede away the very right for which the action was commenced. It was conceded by plaintiffs that defendant had a right to the water, but subsequent and subject to the rights of plaintiffs. Whether defendant also had a primary right, to the extent of four second feet, equal with the rights of plaintiffs, or whether he had a superior right by reason of acquiescence or estoppel, is a question which we purposely leave undetermined. The defendant, as before stated, rested without offer-

ing any evidence. In view of the apparent admission made by appellants' counsel to which we have referred, defendant, no doubt, felt justified in resting without offering any evidence. For that reason the court believes it would be manifestly unjust to foreclose the defendant by directing findings and conclusions in favor of the plaintiffs.

Before concluding, it is pertinent to suggest that in our opinion the evidence is wholly insufficient to justify the finding that the Felt-Peterson Company acquiesced in the agreement between the Huntsville Company and the defendant or in the alleged continuous delivery of four second feet of the water to the defendant. What the evidence may disclose upon a new trial we have no means of determining, and we have studiously avoided passing upon any controverted question except those specifically referred to in this opinion.

For the reasons stated the judgment is reversed and the cause remanded for a new trial. The parties, at their option, should have the right to recast their pleadings and make such alterations therein as to them seem proper. The costs to be equally divided between plaintiffs and defendant.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.